**NATIONAL LABOR RELATIONS
BOARD, Petitioner,**

v.

**TEAMSTERS AND CHAUFFEURS UN-
ION, LOCAL 627, INTERNATIONAL
BROTHERHOOD O F TEAMSTERS,
CHAUFFEURS, WAREHOUSEMEN
AND HELPERS OF AMERICA, AFL-
CIO, Respondent.**

No. 11720.

United States Court of Appeals
Seventh Circuit.

Feb. 27, 1957.

Winthrop A. Johns, Asst. Gen. Coun-
sel, Julius G. Serot, Atty., N. L. R. B.,
Washington, D. C., for petitioner.

Mozart G. Ratner, Chicago, Ill., for
respondent.

Before MAJOR, FINNEGAN and
LINDLEY, Circuit Judges.

MAJOR, Circuit Judge.

· The National Labor Relations Board
(referred to as the Board) filed a peti-
tion in which Teamsters and Chauffeurs
Union, Local 627, International Brother-
hood of Teamsters, Chauffeurs, Ware-
housemen and Helpers of America,
AFL-CIO (referred to as the Union)
was named as respondent, which sought
an adjudication of contempt of court
against the Union for disobeying, fail-
ing and refusing to comply with, and
continuing to disobey and to refuse to
comply with a decree of this court en-
tered herein on April 20, 1956. In re-
sponse to a show cause order, the Union
filed an answer requesting dismissal of

the petition. Subsequently, the Board filed a response to the Union's answer and the Union a reply thereto.

In our view, the matter can be disposed of without the taking of testimony inasmuch as the pleadings raise no dispute as to any material issue of fact. Our decree of April 20, 1956 recites that it is entered "pursuant to a settlement agreement of the parties dated November 17, 1955, and the parties having consented to the entry of a decree of this court enforcing the order." As the decree is bottomed upon a settlement agreement, it appears pertinent to give a brief résumé of the proceedings which culminated in its entry.

The case was initiated upon charges filed with the Board by Standard Oil Company, which alleged that the Union had violated Sec. 8(b) (4) (A) and (B) of the National Labor Relations Act, 29 U.S.C.A. § 158(b) (4) (A) and (B). On July 27, 1955, the Board filed in the United States District Court for the Southern District of Illinois, Northern Division, a petition under Sec. 10(*l*) of the Act, alleging that the Board upon investigation had reasonable cause to believe that the Union, contrary to the terms of the Act, was picketing the gasoline station of one Wm. T. Martin for the purpose of requiring him to bargain with the Union, and was picketing the premises of Standard Oil Company for the purpose of inducing it to cease doing business with Martin.

The Union by answer denied there was reasonable cause to believe that the object of the picketing was as charged and affirmatively alleged that the purpose of picketing Martin was to induce his employees to join the Union, and the purpose of picketing Standard was to protest Standard's assignment of supervisory personnel to perform work which Standard, by contract with the Union, had agreed to assign only to rank and file production workers represented by the Union.

Following a hearing, the District Court granted the temporary injunction based upon the finding that the Board had "reasonable cause to believe" that the object of the Union's picketing was as alleged by the Board. The temporary injunction enjoined the Union from committing the acts alleged in the petition as constituting unfair labor practices. Subsequently, the Board issued a complaint which reiterated the unfair labor practice charges alleged in the petition for temporary injunction, to which the Union entered its denial and made substantially the same affirmative allegations as it had in its answer to the petition for temporary injunction.

Thereafter, negotiations took place between the Board and the Union with a view of disposing of the issues in dispute without litigation, which culminated in the settlement agreement of November 17, 1955. Standard Oil, the charging party, vigorously opposed the settlement agreement and any and all orders issued pursuant thereto. At all times the Union denied that it had committed the unfair labor practices with which it was charged, and agreed to the disposition of the matter without litigation only upon condition that there be no finding against it of an unfair labor practice or, in other words, that there be no adjudication of those issues. As a result of the position of the Union in this respect, the settlement agreement incorporated the Board's complaint containing the alleged unfair labor practices and the Union's denial thereof, and also provided, "All parties hereto expressly waive hearing, * * * the making of findings of fact or conclusions of law by the Board * * *."

The settlement agreement provided for the entry of an order by the Board which subsequently, in substance, became the decree of this court. This decree provided that the Union "cease and desist from" certain specified activities which were substantially those alleged in the original complaint as constituting unfair labor practices.

The Union, by the terms of the settlement agreement, the Board's order and the decree of this court, was directed to post at specified places and send to its

members and to certain named employers signed copies of a notice attached to the decree and, also, to send to said employers a signed copy of a letter also attached to the decree. The essence of the contemptuous conduct charged in the Board's petition is as follows:

> "Respondent has disobeyed and failed and refused to comply with, and continues to disobey and fail and refuse to comply with, the said decree in that, although posting and mailing the notice and letter specified in the decree, respondent contemporaneously posted alongside said notice and mailed with said letter, other letters which in material and substantial respects altered the notice and letter required by the decree and destroyed their effectiveness."

On or about May 8, 1956, the Union, in compliance with the provisions of the decree, posted at proper places and mailed to its members and the named employers signed copies of the notice and letter, as required by the decree (also as required by the Board's order and the settlement agreement). There is no question but that this constituted a literal compliance by the Union with the notice and letter requirements of the decree. However, the Union simultaneously posted in connection with said notices copy of a letter which it had mailed to its members. The Union also enclosed with the notice sent to its members a copy of such letter, written on its own official stationery. Further, it wrote a letter to the employers named in the decree and enclosed a copy of such letter with the notice which it was required to send to such employers.

The Board relies solely upon the posting and mailing of these letters in support of its contempt charge. The two letters are so similar in substance that it is sufficient, so we think, to set forth only the one which was posted in connection with the official notices and sent to Union members. It follows:

> "To Our Members:
>
> "Enclosed please find a letter which we agreed to send you as part of the settlement agreement we made with the National Labor Relations Board in order to avoid incurring further costs of litigation in the proceeding which Standard Oil brought against us under the Taft-Hartley Act. We have consistently maintained that we did not violate the Act and the settlement agreement specifically so states. All we would possibly gain by continuing the legal battle was to avoid sending you this notice. That did not seem worthwhile since the terms of the settlement agreement with the NLRB under which this notice is posted plainly reserves to us all the legal rights, including the right to strike and to picket in labor disputes with Standard Oil, to which we are entitled under the Taft-Hartley Act."

The Board in its petition alleges:

> "By posting and mailing the aforesaid additional letters, respondent materially altered and qualified, in a manner tending to render ineffective, the notice and letter required to be posted and mailed by the decree."

The Union contends that there is nothing in the letters which detracts from, alters or impinges upon the terms of the decree and that it had a right to inform interested parties, particularly its own members, not only as to the terms and conditions of the settlement agreement but the reasons for its becoming a party thereto. Furthermore, it contends that the statements contained in the letters are either factual or represent an expression of opinion, all of which is permissible under Amendment I of the United States Constitution.

It is hardly open to question but that the decree requirement as to the sending of the letters was based upon the settlement agreement, that the Union, as shown by such agreement, at all times

took the position that it was not in violation of the Act, and that it retained all rights which it had under the Taft-Hartley Act. Certainly there is no statement in the letter which directly contradicts or impinges upon the terms of the decree, and the Board does not so contend, but it argues that by implication such result was produced. We think the position of the Board is picayunish and supported neither by logic nor authority. A case strikingly similar to the instant situation is Budd Mfg. Co. v. National Labor Relations Board, 3 Cir., 142 F.2d 922, wherein a rule to show cause why the respondent should not be held in contempt was discharged. In that case, as here, the Board relied entirely upon two letters written by the employer to its employees. (The decree alleged to have been violated and the letters asserted to be contemptuous are set forth commencing at page 929.) A reading of those letters readily discloses that the Board's position there was much stronger than it is here. Even so, the court stated, at page 926:

"We fail to see how the letter and enclosure standing alone can be thought to violate anything contained in the decree. Certainly, there is no direct prohibition in the decree purporting to restrain the employer or its officers or agents from entertaining opinions on labor matters or on any other subject or from giving such opinions free expression. Nor could the decree validly contain any such prohibition.
* * *

"It can hardly be questioned that the constitutional guaranty protects the employer and the employee alike. Thus, to make known the facts of a labor dispute has been recognized as a constitutionally protected right of a member of a union. [Citing cases.]"

The court further stated, at page 928:

"In passing, it is of no distinguishing moment that Budd's letter and enclosure went out contemporaneously with the Company's post-ing of the notices of compliance. The contempt charge could as well have been based upon an utterance at any time subsequent to the employer's submission to the decree. The right to free speech in the future is not to be forfeited because of misconduct in the past."

The court held that the right of free expression was privileged and, at page 929, "that the privilege was not lost through any threat or act of discrimination, coercion or intimidation by either of the respondents in violation of the employees' rights under the Act."

In National Labor Relations Board v. M. E. Blatt Co., 3 Cir., 143 F.2d 268, the employer sent out notices contemporaneously with those which the Board had ordered. The court, referring thereto, stated, at page 275:

"We think that the contents of this notice, standing alone, cannot be deemed to constitute such an interference with, such a restraint or coercion of the respondent's employees in the exercise of the rights guaranteed to them by the Act as to constitute an unfair labor practice."

The Board contends that West Texas Utilities Co., Inc. v. National Labor Relations Board, 92 U.S.App.D.C. 224, 206 F.2d 442, rather than the Budd case, 142 F.2d 922, is controlling here. The Board appears to ignore the marked factual distinction between the instant case and West Texas. About the only similarity is that a so-called second notice is involved in each case. In West Texas, the employer, by decree, was required to and did notify its employees that it would recognize and bargain with a certain designated union as the exclusive representative of its employees. Subsequently, it sent a second notice to its employees which amounted to a repudiation of the obligation imposed upon it by the decree. See notice set forth, at page 445 of the opinion. More than that, the employer proceeded to negotiate and enter into an agreement with a third party concerning wages to be paid

its employees. True, the court held that the second notice violated the terms of the decree, which we think was a correct holding under the circumstances. It should not be overlooked, however, that the court was not concerned merely with a second notice, as are we in the instant situation. There was the additional and determinative factor that the employer violated the decree by entering into a bargaining agreement with a party other than the one specified. In other words, the employer was in contempt either with or without the so-called second notice.

Consistent with the privileges which stem from the first amendment, the Labor Act itself recognizes the right to express views, argument or opinion or the dissemination thereof in whatever form, providing such expression "contains no threat of reprisal or force or promise of benefit." Title 29 U.S.C.A. § 158(c). Certainly there is no basis for a finding or conclusion that the letters contained any threat of reprisal or force or promise of benefit. The Union asserts as a fact, not disputed by the Board, that it complied with the temporary injunction issued by the District Court and to the present day has refrained from the activities alleged in the Board's complaint as constituting unfair labor practices. More than that, the Union asserts that it does not intend or propose to engage in such activities in the future.

■ We are not unmindful, of course, that we are here concerned with the charge of a violation of a court decree rather than an unfair labor practice under the Taft-Hartley Act. Even so, we think the privilege of free speech or free expression must be recognized. Whether in connection with a decree or an unfair labor practice, a limitation upon the privilege can be tolerated only where such speech or expression is intended or calculated to produce some result illegal under the Act, such as restraint or coercion.

■ The conclusion which we have reached makes it unnecessary to discuss other questions argued by the parties. The burden is upon the Board to establish the charges made in its petition. This it has failed to do. The petition is dismissed and the rule to show cause discharged.